FILED
9/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VIRGIL GIBSON | No. 24 CR 339<br><br>Judge Virginia M. Kendall |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant VIRGIL GIBSON, and his attorney, MATTHEW CHIVARI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

1. The superseding indictment in this case charges defendant with conspiracy to take a motor vehicle from the person and presence of a victim by force, violence, and intimidation with intent to cause death and serious bodily harm, in violation of Title 18, United States Code, Section 371 (Count One); taking a motor vehicle from the person and presence of Victim A by force, violence, and intimidation with intent to cause death and serious bodily harm, in violation of Title 18, United States Code, Section 2119 (Count Two); using, carrying, and brandishing a firearm during and in relation to the crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Three); taking a motor vehicle from the person and

presence of Victim B by force, violence, and intimidation with intent to cause death and serious bodily harm, in violation of Title 18, United States Code, Section 2119 (Count Four); using, carrying, and brandishing a firearm during and in relation to the crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Five); Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a) (Count Six); using, carrying, and brandishing a firearm during and in relation to the crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Seven); and kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) (Count Eight).

2. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charges to Which Defendant Is Pleading Guilty**

4. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count Two, which charges defendant with taking a motor vehicle from the person and presence of Victim A by force, violence, and intimidation with intent to cause death and serious bodily harm, in violation of Title 18, United States Code, Section 2119; Count Four, which charges defendant with taking a motor vehicle from the person and presence

of Victim B by force, violence, and intimidation with intent to cause death and serious bodily harm, in violation of Title 18, United States Code, Section 2119; Count Five, which charges defendant with using, carrying, and brandishing a firearm during and in relation to the crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A); and Count Eight, which charges defendant with kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1).

**Factual Basis**

5. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two, Four, Five, and Eight of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

With respect to Count Two of the superseding indictment: On or about April 7, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant, with intent to cause death and serious bodily harm, took a motor vehicle, namely, a 2009 Chevrolet Malibu, that had been transported, shipped, and received in interstate commerce, from the person and presence of Victim A by force, violence, and intimidation, in violation of Title 18, United States Code, Section 2119.

Specifically, on April 7, 2024, at approximately 11:40 p.m., defendant walked to a gas station located on the 5900 block of South Morgan Street in Chicago. Defendant approached two individuals who were inside a black SUV that was parked

at the gas station. Attempting to carjack them, defendant pointed a firearm, namely, a Walther PDP 9mm pistol bearing serial number FDJ3579, at the driver and opened the driver's door. The driver fled in the black SUV from defendant and drove away from the gas station.

Defendant went inside the gas station store. As Victim A was about to exit the store and head back to his car, defendant pressed the Walther PDP pistol to Victim A's stomach and threatened to shoot him. Defendant said, "If you don't want to die, I promise you gonna die right now. Give me everything out your pockets. Don't make no sudden moves." Defendant walked Victim A over to his 2009 Chevrolet Malibu at gunpoint. Defendant forced Victim A to open the car. While pointing his pistol at Victim A, defendant demanded that Victim A hand over his car keys and cell phone, which Victim A did. Defendant and his co-defendant, Marquice Williams, got into Victim A's car and drove away from the gas station.

Defendant acknowledges that Victim A's 2009 Chevrolet Malibu had been transported, shipped, and received in interstate commerce prior to April 7, 2024.

With respect to Count Four of the superseding indictment: On or about April 8, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant, with intent to cause death and serious bodily harm, took a motor vehicle, namely, a 2022 Kia K5, that had been transported, shipped, and received in interstate commerce, from the person and presence of Victim B by force, violence, and intimidation, in violation of Title 18, United States Code, Section 2119.

With respect to Count Five of the superseding indictment: On or about April 8, 2024 at Chicago, in the Northern District of Illinois, Eastern Division, defendant did use, carry, and brandish a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, carjacking in violation of Title 18, United States Code, Section 2119, as charged in Count Four of the superseding indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A).

With respect to Count Eight of the superseding indictment: On or about April 8, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant did unlawfully seize, confine, kidnap, abduct, and carry away Victim B for his own purpose and benefit, and used a means, facility, and instrumentality of interstate commerce in furtherance of the commission of the offense, in violation of Title 18, United States Code, Sections 1201(a)(1).

Specifically, just after midnight on April 8, 2024, defendant and his co-defendant, Marquis Williams, drove in Victim A's Chevrolet Malibu to a gas station located on the 8300 block of South Cottage Grove Avenue in Chicago. Defendant and Williams went inside the gas station store. They walked out of the store with Victim B. As Victim B headed to his 2022 Kia K5, defendant pointed a pistol, namely, a Walther PDP 9mm pistol bearing serial number FDJ3579, at Victim B and demanded his possessions. Victim B gave defendant his wallet and the keys to his car. Defendant forced Victim B to get into the front-passenger seat of the car at

gunpoint. Defendant got into the driver's seat of Victim B's car and drove the two of them away from the gas station. Williams got back into Victim A's Chevrolet Malibu and drove away from the gas station.

Defendant drove Victim B to the vicinity of East 79th Street and South Ingleside Avenue in Chicago. While pointing the pistol at Victim B, defendant demanded that Victim B transfer $1,000 to defendant using Victim B's CashApp account. Victim B did so. Observing that Victim B had approximately $18 left in his bank account, defendant demanded that Victim B transfer those funds to defendant as well. Victim B did so. During this period, Williams drove around the block at defendant's direction to ensure that there were no police in the area.

After forcing Victim B to send him money, defendant drove Victim B to an area a few blocks away. Defendant stopped the car, pointed the pistol at Victim B, and demanded that Victim B get out of the car and take off his clothes. Defendant told Victim B, "I'm gonna shoot the fuck out of you." As Victim B attempted to comply, defendant threatened him, saying, "Hurry up. … You got 15 seconds, bro." Victim B removed his jewelry and most of his clothing, which he provided to defendant. Defendant then demanded that Victim B get back in the car, which he did. Defendant drove to a gas station located on the 7400 block of South State Street. When they arrived at the gas station, defendant demanded that Victim B get out of the car. Victim B did so. Defendant then drove away from the area in Victim B's car.

Defendant acknowledges that Victim B's 2022 Kia K5 had been transported, shipped, and received in interstate commerce prior to April 8, 2024.

**Maximum Statutory Penalties**

6. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count Two carries a maximum sentence of 15 years' imprisonment and a maximum fine of $250,000. Defendant understands that with respect to Count Two, the Court may impose a term of supervised release of not more than three years.

b. Count Four carries a maximum sentence of 15 years' imprisonment and a maximum fine of $250,000. Defendant understands that with respect to Count Four, the Court may impose a term of supervised release of not more than three years.

c. Count Five carries a statutory mandatory minimum sentence of seven years' imprisonment and a maximum sentence of life imprisonment. The sentence of imprisonment on Count Five is required to be consecutive to any other sentence imposed. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Five also carries a maximum fine of $250,000. Defendant understands that with respect to Count Five, the Court also may impose a term of supervised release of not more than five years.

d. Count Eight carries a maximum sentence of life imprisonment and a maximum fine of $250,000. Defendant understands that with respect to Count Eight, the Court may impose a term of supervised release of not more than five years.

e. Defendant understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

f. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pleaded guilty, in addition to any other penalty or restitution imposed.

g. Therefore, under the counts to which defendant is pleading guilty, the mandatory minimum sentence is seven years' imprisonment, and the total maximum sentence is life imprisonment. In addition, defendant is subject to a total maximum fine of $1,000,000, a period of supervised release, and special assessments totaling $400, in addition to any restitution ordered by the Court.

**Sentencing Guidelines Calculations**

7. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

8. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2025 Guidelines Manual.

b. **Offense Level Calculations.**

Count Two

i. The base offense level for Count Two is 20, pursuant to § 2B3.1(a).

ii. The offense level is increased by six levels, pursuant to Guideline § 2B3.1(b)(2)(B), because a firearm was used to convey a specific threat of harm or to make physical contact with a victim.

iii. The offense level is increased by two levels, pursuant to Guideline § 2B3.1(b)(5), because the offense involved carjacking.

iv. The total offense level for Count Two is 28.

Count Four

v. The base offense level for Court Four is 20, pursuant to § 2B3.1(a).

vi. The offense level is increased by four levels, pursuant to Guideline § 2B3.1(b)(4), because a person was abducted to facilitate commission of the offense.

vii. The offense level is increased by two levels, pursuant to Guideline § 2B3.1(b)(5), because the offense involved carjacking.

viii. The total offense level for Count Four is 26.

Count Five

ix. Pursuant to Title 18, United States Code, Section 924(c)(1)(A) and Guideline § 2K2.4(b), defendant's guideline sentence with respect to Count Five is 84 months' imprisonment, which sentence shall run consecutively to any other sentence imposed on defendant.

Count Eight

x. The base offense level is 32, pursuant to Guideline § 2A4.1(a).

Combined Offense Level

xi. Pursuant to Guideline § 3D1.2, Counts Four and Eight are grouped together because they involve the same victim. Pursuant to § 3D1.3(a), the offense level applicable to the Group is 32. Pursuant to Guideline § 3D1.4(a), the Group counts as one unit because it is the Group with the highest offense level. Pursuant to Guideline § 3D1.4(b), Count Two counts as one unit because, with an adjusted offense level of 28, it is between one to four levels less serious than the Group with the highest offense level. Therefore, the total number of units is two. Pursuant to Guideline § 3D1.4, two levels are added to the Group with the highest offense level. Therefore, the combined offense level is 34.

Acceptance of Responsibility

xii. The government understands that defendant will truthfully admit the conduct comprising the offenses of conviction and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xiii. In accordance with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 31 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 108 to 135 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of seven years' imprisonment.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

14. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such

corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

**Agreements Relating to Sentencing**

15. Each party is free to recommend whatever sentence it deems appropriate.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

17. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

18. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

19. Defendant agrees to pay the special assessment of $400 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

20. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

21. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment and remaining counts of the superseding indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

9. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24 CR 339.

22. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

d. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

i. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

ii. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

iv. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

iii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the

filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

24. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

25. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

26. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

27. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

28. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

29. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**Conclusion**

30. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9-3-26

*/s/ Christopher K. Veatch*

CHRISTOPHER K. VEATCH
For the United States Attorney

Kirsten Moran

KIRSTEN MORAN
BRANKA CIMESA
Assistant United States Attorneys

Virgil Gibson

VIRGIL GIBSON
Defendant

MATTHEW CHIVARI
Attorney for Defendant